I wonder if the lawyers that we're going to argue would step up and tell us who you are. Good morning, Mr. Rappaport. I represent the Appellant's Defendant in the Trial Court, Club Misty D. E. D. A. Mr. Rappaport. Good morning, Your Honor. Mr. Michael Shinsky, on behalf of the law firm, General Schwartz, I represent the Appellee's Plaintiff in the underlying matter. Good morning. Fifteen minutes aside, you can save up from yours any portion you wish for a rebuttal, and I think you can safely assume that we've read your briefs. We'll do. Okay. May it please the Court, I thank you for calling our case and deciding your argument. I appreciate the opportunity to do that on behalf of my client. I will try to avoid disputing what's in the brief, because I think there's a point that doesn't really jump out from the brief that I want to make. In my professional opinion, my client had a strong probability of winning this case on the merits. I'm not foolhardy enough to predict it, but I am confident enough that we had a good chance of winning this case on the merits. Why do I say that? Negligence case is a grand case. Negligence case requires the plaintiff to prove there was a failure to prevent a criminal assault. He has to prove that the criminal assault was reasonably foreseeable and likely. There's a lot of case law in this district that affect Samir, Osborne, Lewis. As a matter of fact, I had even prepared and filed a motion for summary adjustment on the negligence liability. I didn't pursue it, obviously, given the truth of the matter. I know, and do we really care about the merits of the case? Really, what we're supposed to focus on, and I know there's some dispute about this as to the scope of our review, power is under 308. But really, what we're supposed to focus on is the question of law presented to us in the 308 certification. Whether or not you win or lose, depending on how we answer the question, is of no moment to us. Unless we adopt that principle that in the interests of judicial economy, we could go beyond the 308 and decide the case. I would rather you focus on this language that was certified and tell us why the trial judge was incorrect in his ruling with respect to what he thought the law was on 216. I'd be glad to. I'll take my tour back to the point. The only reason I have for that. I mean, the fact that you might have won the case is irrelevant to the issue as to whether or not you complied with your requirement under 216. Wouldn't you agree? Yes. I mean, you could blow a case, even though on the merits you're going to win if you get to a jury, if you don't respond appropriately to discovery requests under 216. And I was not going to spend my time arguing why. Well, yeah, but you started off by saying you've got a good case going for you because you've got all these depositions that indicate that maybe in the long run, were this case ever to get to a jury, the depositions would, you know, carry the day for you. Correct. And the point I've made in my brief that I was trying to beef up by where I started was I was deprived of that opportunity by the trial court's ruling. And my position is, and I've supported that in the case law, unfairly because my client didn't commit any discovery violation to justify that kind of sanction. You're right, somebody can blow it. For example, if I'm representing a defendant corporation, I completely refuse to answer discovery. I pull all sorts of discovery tricks. I don't produce my clients for deposition. My clients lie. This Court's familiar with Rule 19 and the whole range of sanctions and how there's step-up graduated sanctions. People can blow cases by engaging in games or unfair conduct in discovery, and they can lose cases that they otherwise might have been able to win on the merits because they blow it in discovery. I didn't do that. Vision point tells us courts want cases decided on the merits rather than a technical trap. And the problem is the way the trial court looked at Rule 216, it was exactly that technical trap. And I'll give you a good example that doesn't jump out of my brief. It's the Moy versus Eng case. And I'll start out by saying it this way. At the trial court level, there's a lot of clever lawyers out there. On my best days, I try to be one of them. We look at these rules, and we try to figure out, all right, are we complying with them? Well, 216 has been driving the trial bar crazy for the last decade. It has, and there's an article. Part of that may be our fault. Well, that's why I would appreciate it if the court would give us some time. Okay. Let me ask you a question then about Mr. Hodge's affidavit. Paragraph 7. It's in your brief at SR 078A7. You got it there? SR 078. It's the second page of Hodge's affidavit. Sure. Paragraph 7. I also contacted the president of Plum Misty, Matt Schulte, as part of my work to prepare the response to the request to admit. Because Schulte is the president of the corporation, now defunct. Everybody knows that. It was my opinion that he would be the proper signatory for that response, even if he did not have personal knowledge of the facts of the incident. Isn't that the crux of their argument? That you got him to sign it, or Hodge's got him to sign it, even though he didn't have personal knowledge of the facts of the incident and went ahead and denied them in a sworn document. Yes, that is the crux. That's the crux of their argument, it seems to me. Their argument. That you can't do what he did in paragraph 7. Their argument. And apparently Schulte can't rely on Hodge's advice either. That's the problem. I know. That's where I disagree with this. I know. That's where I disagree with their argument. But the lawyer is openly saying that he did seek out, he did gain information, and that the information he was putting forth was accurate and that he thought the best person to sign off on that was the president of the now defunct. So there was no pretense at all. That's absolutely correct. And I think that Hodge's opinion, hey, I have to have Schulte, the president of the defunct corporation, sign this because he's the only corporate representative of the corporate party. I think that Hodge's was absolutely correct, just like Jeff Gossett, driver of an automobile, had to sign the request to admit in the Cebulski v. Gossett case. Now, I'm going to throw you a softball. Page 7 of the defendant's brief. My brief? Defendant. I'm sorry. Oh, sure. The plaintiff's brief. Sure. Page 7. The last sentence above standard of review. Merely hiring an attorney to conduct an investigation of all of the requested information does not give an authorized representative of a corporation personal knowledge of the contents discovered by the attorney. In this situation, the corporate rep does not have knowledge until the attorney shares and explains the information that was discovered during the year's alleged investigation. Okay. Did anybody testify or did anybody suggest that the corporate representative did not talk to the attorney about the information that was going to be included in the answers to the interrogatory? No. Or did you just shove it under his nose and say, sign this? That's kind of the heart of their argument. Hey, you just can't blindly, willy-nilly sign something. Yeah. The deposition of Schulte was a little unclear on that because Schulte said, well, I didn't know, so I signed this. What Hodges is saying in his affidavit is, I prepared this based on what I knew and I had Schulte sign it. Yeah. It's a little hard to develop a record as to what Hodges told Schulte because that's attorney-client privilege. Okay. At some point, and this kind of goes right to the heart of what they're saying. It does because then we go back to the certified question. Take a look at the question as it was drafted. This is on page one of your brief in your introductory paragraph. Based on lack of knowledge of the subject request on the part of the corporate and the president. I want you to go to comma after propounded. And the corporation asserts that its denials of the request to admit were based on information learned by defense counsel. Right. From interviewing the prior employees of the corporation. Right. That's the certified question. Correct. And what he wants us to do is to say that that's a violation of 216. Correct. Because it was based on information learned by defense counsel from interviewing the prior employees of the corporation. This certified question doesn't say anything about precisely what kind of communications has to take place between the lawyer and the representative. It doesn't even ask us to decide that. It just says flatly that if the denials are based on information learned by defense counsel, then we have to strike all of the answers as admitted. Is that your reading of the way this is drafted? If we answer this yes, then the fact that the corporation asserts that its denials of the request to admit were based on information learned by defense counsel from interviewing the prior employees, then if that's the case, we have to strike all of those answers and deem them admitted and deem the question. Is that how you read that? I drafted this question. I know. Oh, you drafted it. I did because I prepared that order at the trial court and I was trying to frame perhaps well, perhaps not, the problem that I had. I don't know. And I think the issue you're dwelling on is. Well, I guess one of the questions I'm asking you is you drafted it. Did you deliberately or inadvertently embed in this question of law a question of fact? I don't think so. Neither do I because I think, well, go ahead. You see, they're saying that under Brookbank you're out of the box based on this because you've got to certify on your own behalf. That is the representative. You can't rely on the attorney's representations currently even if he communicates them to you. Well, Brookbank was a technical question of who signed the document and the Brookbank defendant couldn't sign the document because the lawyer couldn't find the document. He couldn't find it. I found my defendant. I know, but they cite Brookbank for their argument even though there is a clear distinction where you can distinguish Brookbank. You had your client and Brookbank couldn't find it. Even then, if you read Coleman's dissent, she doesn't think it would make any difference. Here's where the law lays a trap for me. Brookbank requires me to procure the signature of my client, not my signature or Hodges' signature. My client doesn't know anything. My client cannot have personal knowledge because he wasn't there. Any knowledge he's going to have he's going to get from someone telling him. Maybe that someone is Hodges. So let's say that Hodges doesn't download the information to Matt Schulte. Hodges says to Matt Schulte, here, you can sign this. I've got a good faith basis for it. I've reviewed this. I know what I'm doing. I'm your lawyer. Great. Trust me, I'm your lawyer. That has a great ring to it, but at some point, does it? At some point, that's what people have to do. They have to rely on the advice of their attorney. Exactly. Now, can the fact that perhaps Hodges doesn't download this information to Schulte and Schulte testifies that, I don't know what happened. I signed the denial. The next implicit question, I think we can take from the record. Isn't the option, though, always available here that he can answer Schulte? That's his name, right? Yeah, yes. He can say, I don't have sufficient knowledge to either admit or deny because I don't have, I wasn't present, and I, I mean, that's always, but the court didn't let you amend, right? That's exactly right, and if I would have gone that route, then I'd run into the problem that you have in the Schubluski case and even the Elgin case recently decided where the court says, yeah, fine, you're not a doctor, Mr. Health Club manager, Mr. Driver, you don't know, but your attorney's insurance company, people have a pretty good idea of whether the medical bills are reasonable, so don't try, gee, I don't know, I'm not a doctor. So the law holds me to this standard that I have to pull in all this knowledge and information from attorneys, insurers, investigators, corporate employees. You have to do your own investigations. You can't hire anybody to do it, even if you're a corporate president. But the corporate president has to sign the thing because he's the only corporate representative, so I'm in an absolute procedural trick. You're in a trick, you're in a catch-22. But they say in their brief at page 9 now, therefore, Mr. Schulte had a duty to avail himself of the knowledge of the other corporate employees. Avail himself of the knowledge of the other corporate employees. I thought that's what he did when he talked to Hodges, but maybe he didn't, I don't know. Before using his signature as a means to verify the denial set forth by his attorney in the response. Interestingly enough, there's no case citation on that, but that's the crux of their argument. It would have been nice if they'd cited to a case, but I think what they're going to do, and I don't want to put words in his mouth, they're going to rely on hookback and maybe vision point. I don't know. Well, I don't think either case gets him there. There's not a case that said that Mr. Jeff Gossett, the driver that had the accident himself, has to avail himself of the knowledge of the insurance company, maybe the medical expert, maybe the attorney. There's not a case that says that he has to know that himself. But there is a case that says that he has to sign that himself. So that's the problem, that's the procedural trick bag, I think is the colloquial term I used. And because of this procedural trap, I find myself in a situation where I don't have the opportunity to defend the case on the merits. And I understand the point they're making, hey, you just can't willy-nilly sign something. However, I think I've built a pretty good record suggesting that that's not the case, that the knowledge group, corporate memory group, attorneys, investigators, insurance companies, former employees, did have some knowledge sufficient to form a good faith basis. I think the word in the case was reasonable inquiry. Did that reasonable inquiry and put together a good faith denial. And the problem is, if you can't do a don't have personal knowledge, therefore I'm not going to answer, because we know the case law has trouble with that. Well, I didn't do that, I denied. You have to be able to deny based on somebody else's knowledge if you don't have that knowledge yourself, if Schulte's the only guy that can sign the thing. So that's the problem. And I think it would be helpful if we could get just some guidance at the trial court level to avoid this procedural trap, because clever lawyers will take rules and try to use them for traps. The Moy versus Enn case, it has to be signed and sworn, therefore we have to signature in a separate query. 216 is clearly a discovery rule designed to trip up the unwary. Correct. If you wanted to give guidance, see, if you wanted some guidance, it might have been appropriate in the affidavit to put down exactly what happens based on the information my lawyer gave me, which he received from investigators and so and so. This is what occurred. I mean, you come close in that paragraph 7 in the lawyer's affidavit. I do. I do. And another way to do it would be for me to submit, and I've seen this done at the trial court level where people are uncomfortable with a Form 1109 certification. That's the language from the statute. That's the language that the Supreme Court lessons from. It's a practical matter if you've got a corporate client, okay, who's paying you a lot of money to represent. And you have a track record. One would hope, Justice Kennedy. And you have a track record with this client where he relies upon you absolutely. Maybe you got him out of his DUI 20 years ago, whatever, but you're his lawyer. And he says to you when you come in with this request to admit, and you've prepared it all on nice, thick, stiff parchment paper, kindly prepared, and he says to you, what's your first name? Stewart. Stewart, look, don't bother me with the details. Where do I sign? Trust me, I'm your lawyer. Well, isn't that as a practical matter what goes on every day of the week? It does in my practice because at some point I have information available to me that the client signing off doesn't, and I have that conversation where I say, look, here's what you're signing. But this attorney says now you have to brief him thoroughly on everything that you undertook in the way of the investigation to reach the conclusions that you reached. Denied, denied, denied, denied. Which is exactly the problem. Which I suppose means that you would then send your client home with four pounds of depositions saying, go read these depositions to protect yourself. Is that what they're basically asking us to do, do you think? And that's what they're faulting me for not doing. I'm sorry, that's what they're faulting Schulte for not knowing himself. Had he read the depositions, it would have been okay. That seems to be their argument. And then they still would have been able to say, aha, but you don't have personal knowledge, do you? Well, of course not. He wasn't there. Of course, it would have been nice if you could have gone to the defense bar and got an amicus curiae brief and have somebody say that this has been going on for generations. Yes. Well, they argue the other side, in effect. They say for generations the other practice has been going on. Maybe we should hear from them. Is there anything else, any other points you want to make? No. Okay. We'll give you an opportunity to respond after we've heard from Mr. Shinsky. Michael, you're up. Thank you. Those two statements I quoted you and didn't give you a chance to fight back on, on page 7 and then page 9, you don't cite to any cases, but I assume you're going to argue that maybe Kampen and Brookbank support your position? Yes, sir. Okay. May it please the Court? Your Honors, just to address the issues that you've been talking about, first, this request to admit was filed before any of the depositions took place. This case was filed. Filed but not answered, right? They were answered before the depositions took place. Okay. They were filed and- That wasn't clear from the briefs. Yeah. And it may not have been clear from the briefs. I know they were part of the record that Mr. Rappaport had in his volumes. They were filed about two days after the defendant answered discovery responses. And after speaking with Mr. Hodges, the former attorney, he didn't have a lot of information, so in order to further my discovery, I filed a request to admit to see where it would take me in the discovery process. I understand. He even asked me for additional time, as you can see in the record. I don't have the pages. But he asked me for additional time. I believe that my request was filed on August 28th of 2007. And his answer was filed in October, which is past the 28th days. And he called me up and asked me, can I have additional time? I need to speak to Mr. Schulte and have him sign it. Of course, I said, take the time. And that was done. I received them. They were denied. I asked to take Mr. Schulte's deposition. Now, an interesting thing here that wasn't pointed out was the discovery responses, they were answered by a different part of the defendant. They were answered by the manager of the bar, Shane Fultz, because he was there on the night of the incident and he had knowledge of this. So when they say in Mr. Hodges' affidavit, I thought that Mr. Schulte was the only person that could answer this. That's clearly incorrect because in August, he had Mr. Fultz answer these because he had additional knowledge. He actually was there, spoke to the employees at the bar. So you're saying that he could have been the signatory on these requests? Yes, Your Honor. He was found deemed enough to have enough knowledge to be a party Now, how does all of this factual background that you've just given us impact on the certified question? Well, the certified question goes into information that was not shared by the person. How do we know that? How do we know that? That isn't what the certified question says. Well, in the certified question That's why I asked you very precisely about that language. And I believe that even in the transcript from the circuit court, I stated that that should include this and Judge Egan said, I believe that that does. Okay. So we are supposed to take after the comma, after propounded. And the corporation asserts that its denials of the requests to admit were based on information learned by defense counsel from interviewing the prior employees of the corporations. We are to infer from that that somehow there's a deficiency in what the certifier or the corporate officer is supposed to do, other than base his answers or denials on information learned by defense counsel from interviewing the prior employees of the corporation. Are you missing the clause there that you're relying on for your argument in this case? There is in Judge Egan's ruling when I asked and Mr. Rapoport designed his question and brought it back up to the court's attention to say, it should also state that this information from the defense attorney was not shared with the scientific. That isn't in the certified question. And Judge Egan stated, and it's in the volumes, that he believed that that was adequate to include that. And even in the arguments made. Do you agree? I do agree. But Judge Egan thought that that was appropriate to include that. The question that's propounded here is, and the corporation asserts that its denials of the request to admit were based on information learned by defense counsel from interviewing the prior employees. So there's no suggestion of what you're saying, that this was all based on, is not being. I understand that, but it's in the record that was presented to the court. That doesn't help us. Unless, unless you're suggesting that we need to go beyond the certified question to interpret what the certified question really means. That's not our job. This is supposed to be, in its pure form, just as it is, word for word, a question of law, which we answer either yes or no. Okay? Understood. But you're suggesting, if I understand you right, that now you need a little bit more information, appellate court. You need to know about what we really meant. And what we really meant was something that goes beyond the certified question. Is that a fair statement of your position? Yes and no. I believe that, because I did bring it up. Spoken by a true lawyer. I believe that Judge Egan felt that that certified question encompassed that information. And because, and just so we're all clear, the argument that this was made, that these answers were made based on an attorney's investigation, were not brought up until the motion to reconsider. Okay, but you see, what you're doing is you are introducing factual issues into what is presumably a question of law. And what I think you're telling us is that in order for us to really understand this certified question, we need to know the factual background that led up to the presentation of the question. Yes, sir. That's fair enough? That's fair. We're not supposed to do that. That's your job. Your job is to frame a question of law that enables us to answer it as a question of law, okay, without any reference to the record whatsoever. Now, I think, well, I better not say anything. What I think is unimportant. The question is, is this a question of law that we can answer yes or no in a vacuum? See, we have to take its plain and ordinary meaning. That's what we're restricted to. We can't do what you want us to do. We don't have the authority to do it. I could rewrite this question, I suppose, to accommodate your view of what really went on in the trial court. But I don't know whether that would be fair to Mr. Rappaport and his client. Well, this was the argument that was made by Mr. Rappaport during his motion. I want to ask you a question. I just want to confirm this for my own edification. You're saying that when Mr. President of the now-defunct Club, when he answered these questions and made all the denials, none of these other people had been deposed and gave the information they did about what happened that night involving Mr. Scattertelli and Pedro Diaz? Yes, ma'am. That's not what Hodge's affidavit suggests. No, nor is it what the question of law presented to us says. No, that's true. The question says that it's based on information learned by defense counsel. Right. The fact that this, you know, the fact that, let me put it this way. Your argument is basically, since there had been no depositions taken, that Mr. Rappaport or whoever prepared these answers to your requests to admit denied, and the corporate officer also denied, with no basis whatsoever for making those denials because they didn't know anything yet. They knew certain things, Your Honor. But that isn't the certified question that we have before us. The question that you have before you is also what Mr. Schulte based his denials on. In his deposition, he stated, these are my answers. He didn't state these are his answers. He stated, these are my answers, and I answered denied because I'm unable to admit or deny anything, but these are my answers. We asked him specifically, what do you base your denials on? He didn't say I based it on a conversation I had with my attorney. He didn't say I based it on documentation, which was available. But we can't tease any of that out of the certified question without going beyond the certified question and back to the record that was made before the trial court leading up to the presentation of a certified question. We're missing information is what you're telling me, I think. And in order for us to adequately address this 308, we have to expand it to include a couple of other clauses. Well, I think that you have to expand it to include what Judge Egan's intention was under the certified question. And I don't think we can go to what Judge Egan intended to say. I think the only thing we can rely on is what we have in front of us in the 308 word for word. And the question certified was an improper question to be certified. Well, maybe it wasn't improper. Maybe it's easily answered under the current law. That an attorney can answer these questions, not share any of that information. Now, wait a minute. It doesn't say anything about sharing information. It doesn't ask us that. Go back to the language in the clause after the word propounded. And the corporation asserts that its denials of the requests to admit were based on information learned  What you're asserting here is that in this particular factual scenario, in your case, that it wasn't based on that. Because the prior employees of the corporation had not yet been interviewed. But that isn't what the certified question says. It also states based on the lack of knowledge of the subject request on the part of the corporation's president. That's where Judge Egan was inferring that based on the question that I asked him, that was enough to state that the president didn't have any information at the time that he made these denials, including any information from the attorney. That could very well be. But in order for us to verify what you just told us, we have to go beyond the certified question, don't we?  Yes, sir. In other words, what you're telling us is basically, judges, you have to read this certified question in context. And it's a factual context based on the set of facts in this case. And we can't do it. No. It's not our job. This is how the certified question was written by the defense counsel. It was questioned by me and was clarified by Judge Egan. I asked for clarification, and he stated that based on the lack of knowledge, that is sufficient. And I know that's very frustrating. I've had that same situation happen to me many times, and I know how frustrating it is. Okay. I think you've made yourself clear. Other than Brookbank, and I understand your reliance on Brookbank and where it's coming from, and on VisionPoint. Both of you argue that VisionPoint is in your favor. But I wasn't quite sure whether you were as sure of your footing on VisionPoint as you were on Brookbank. Well, see, the problem I have with Brookbank is in using it to support your position. The Justice Tice, in two separate places in Brookbank, says the lawyer with whom or the client with whom he has never had any contact. That's at page 688 in Brookbank. And then she says it again. Ultimately, the trial court has discretion to allow counsel to provide a sworn statement of denial. It does not have it. When counsel has had no contact with his client, here, there's clearly been contact. That was specifically Brookbank from your point of view. But they said that was on a case-by-case basis, taking the facts into consideration, which is not the facts in this case. And they said you cannot hold that to every case that there is out there. In Brookbank, that was a specific circumstance where they could not do that. But you can never use Brookbank, it seems to me, to apply to the facts of this case. But clearly there was contact between the attorney and the corporate representative. Because Brookbank still goes on to state that when there is contact and when you do have a party, that party has to provide a sworn statement of what they're providing. Yes. Right. And the only question you're certifying to us is whether or not he can rely on the representations of his attorney who has done the actual investigation. And I don't find anything in either Brookbank or in VisionPoint that prevents a corporate officer from relying on the representations made to him by his lawyer. But there is no evidence that there were any representations made by his lawyer. It doesn't have to be, because this is a question of law. We don't look at any evidentiary background. All we do is look at the certified question. I don't have a response to the certified question I believe is improper. I was going off of what Judge Egan's intentions were. That's your argument before Judge Egan. Or the certified question. That's your argument before Judge Egan. That was adequate. Okay. We're going to answer the question one way or the other, which will give you an opportunity, or Mr. Rapoport, to say, you know, Judge, the appellate court really messed this case up. All we're trying to do is answer the certified question to the best of our ability. That's all. And I think we've given you some clues as to where we're headed. And, you know, we're going to look at your cases again, particularly Brookbank and VisionPoint. Is there any other case that you really want to stress? Interestingly, you know, you both cited the same cases, and it's ‑‑ I believe that Shabliski and Oles are important cases, Your Honor. Yeah. And I think they also stand for the broad proposition that a corporate officer or a representative can't simply ignore his duty, his duty to inform himself of the facts underlying his denial in this case. Deny, deny, deny, deny. Clearly, he has that duty. But the way you've drafted the certified question, apparently, you're saying that he can't even rely on his lawyer for that information. I think that he has an independent duty to do it on his own. Not necessarily. Because then you go back, you know, and you cite the Chicago Park District, which is a case that really isn't on point, because that was a fraud case involving, you know, discovery. But there was some language in there, and you cited in your brief, attorneys or agents who respond to discovery requests must search the corporate memory by investigating the records available and attempting to ascertain the knowledge of other corporate agents. Now, that particular quote, had you added it to the certified question, after the comment propounded and said, where the attorney or agent who responds to the discovery did not search the corporate memory, did not, okay, then you might have a different answer to the certified question. Because I know where you're headed, and I know what you're relying on. You're relying on the whole background, the whole matrix of what led up to the certified question and what you were trying to accomplish. You obviously convinced the trial judge that under these particular circumstances, these particular denials were inappropriate under the current 216 law. There should have been more investigation that took place. Based on the opponent's answers. Right, right. Yes. And I understand, you know, I'm not trying to denigrate your position. I guess what I'm denigrating is whether or not the 308 that's sent to us really encompassed all of the issues, all of the issues that you hoped would be resolved by us answering the question. And apparently Judge Egan felt that it did encompass all the issues that were being discussed. In those cases that we just talked about, that is stating that a party must avail himself to information even from his attorneys, from an investigator. Right. That's why I believe that these cases are important, because there's nothing in the record. And even in Mr. Rapoport's response in his motion to reconsider, he even admits Mr. Hodges didn't have any communication until Mr. Schulte, why he was denying this. He admits that. And that's where the certified question came in, and that's how it was phrased, where it was believed that that would encompass where the party does not have any knowledge, but the attorney does. And that's how I believe the certified question should be interpreted. Okay. I think we understand your position. Thank you. Thank you. A final word, Mr. Rapoport? Thank you. I understand the court's focus on the certified question, and that is how the Rule 308 appeal is supposed to work. So I'll focus on the certified question in my brief closing and response. The certified question makes it clear that there is information learned by defense counsel from interviewing the former employees that's in the body of the certified question. So the certified question makes it clear that the basis of the denial is that information. So the certified question asks this court, given that there is a basis for the denial, there is a basis for the denial, can the trial court still strike it, deem it, and admit it? Let me ask you this. I want to go back to what Mr. Shinsky said. Is it correct that when Mr. Schulte signed all this, that none of these people have been interviewed? No. When he signed all his denials? No, that is not correct. They were deposed after this in the steps of discovery. However, Hodges says in his affidavit that he interviewed, picked up the phone or went personally spoke with Shane Fultz, the manager, and Ryan Green, one of the security guys there. So he spoke to them and learned the same information that they would later expound on in their depositions. So the suggestion that this was not information that was available, you would say is totally untrue. In other words, when Mr. Hodges spoke to Mr. Schulte, that the information had been given to Hodges to indicate why these were all denials. Yes. Absolutely correct. It was just that the depositions where they later testified that suggest that that was all correct was post the answering of these questions. Correct. Which would be the normal way a lawyer would proceed. Before you submit your client to a deposition, you're going to inquire of your client what he's going to say at it. Or if it's a situation of some kind. You're going to tell him what to say. You may suggest a couple of things. Well, the employees here were going to be the witnesses. Correct. They're former employees. And the very question that you asked Justice McBride about, was that interview conducted before the answer to request to admit, that piece of information is loaded into the certified question with the phrase based on information denials, based on information learned from defense counsel. How do you say that VisionPoint supports you here? VisionPoint. Or don't you think it does? Oh, I do. I do. There's a couple of different. The key thing we take away from VisionPoint is that the Supreme Court is more interested in using Rule 216 as a discovery method to find out facts and narrow facts rather than a trap for the unwary. They even cite a Chicago Lawyer article called, it's kind of sarcastic, that inconvenient truthiness, Stephen Colbert thing, of Rule 216. And they say this is not a method to discover things. It is a way to win a case by default. Just like Moy versus Eng, which VisionPoint overruled. Oh, you didn't give two separate signatures on two separate lines. You only did one, ah-ha, we win, you lose. Yeah. So in this case, couldn't there be at least, if nothing else, the trial court could allow an amendment? Yes. Yes. And there were a couple of different ways for them to do it. And Judge Egan decided not to go that route but to certify this question and. . . Judge Egan decided to strike, deem these facts admitted. I asked for certification because this was obviously dispositive. We put this certified question together. Judge Egan did tweak it a little bit and that's the question now before this court. Correct. That's all I have. Any more questions? No. Counsel, thank you both. Thank you. The case will be taken under advisement.